UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CHRISTOPHER LOEB,

        Plaintiff,

v.

COUNTY OF SUFFOLK, *et al.*,

        Defendants.

**MEMORANDUM & ORDER**
22-CV-6410 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff Christopher Loeb brings a civil rights action under 42 U.S.C. § 1983 against the County of Suffolk, Suffolk County Police Officers Shawn Petersen, Erik Pedersen, Frank Santanello, Mathew Kenneally, Glen Ritchie, and other unidentified John Doe Suffolk County Police Officers (collectively, "Defendants"). Plaintiff asserts claims of excessive force, supervisory liability, failure to intervene, and municipal liability against Defendants. ECF No. 1 at 5–8.

    Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint. ECF No. 11. For the reasons set forth below, the Court grants Defendants' motion.

## BACKGROUND

    Plaintiff's claims arise from his arrest on March 22, 2019, in Suffolk County. Plaintiff alleges that during his arrest Defendants "beat" him and encouraged a Suffolk County police dog to attack him. ECF No. 1 at 3. Plaintiff further alleges that as a result, he suffered substantial pain and serious physical injury. *Id.*

    On October 21, 2022, Plaintiff filed the instant complaint. ECF No. 1. On December 8, 2022, in lieu of an answer, Defendants submitted a pre-motion conference letter requesting leave to file a motion to dismiss the complaint ("letter-motion"). ECF No. 11. On December 20, 2022, following Plaintiff's failure to submit a response to Defendants' letter-motion, on December 20,

2022, the Court directed Plaintiff to file a response by December 27, 2022.  The Court warned Plaintiff that "[f]ailure to respond may result in the Court converting Defendants' letter into the motion itself and deeming it unopposed."  Text Order dated December 20, 2022.  Thereafter, on December 28, 2022, the Court converted Defendants' letter-motion to the motion to dismiss itself and deemed it unopposed because Plaintiff failed to file a response.[1]  *See* Text Order dated December 28, 2022.  Later that day, in response to the Court's December 28, 2022, Order, Plaintiff filed an opposition to Defendants' motion to dismiss.  ECF No. 14.  On June 7, 2023, the Court held oral argument on Defendants' motion and directed the parties to submit further briefing.  On June 14, 2023, Plaintiff submitted supplemental briefing, ECF No. 18, and on June 21, 2023, Defendants filed a supplemental opposition.  ECF No. 19.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[1] The Second Circuit has "approved the practice of construing pre-motion letters as the motions themselves – under appropriate circumstances."  *Kapitalforeningen Lægernes Inv. v. United Techs. Corp.*, 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court construing pre-motion letters as the motions themselves).  A court does not abuse its discretion in construing a pre-motion letter as the motion itself, where the party seeking leave to file the motion had a sufficient opportunity to make the necessary arguments to preserve its position for appellate review.  *See In re Best Payphones, Inc.*, 450 F. App'x 8, 15 (2d Cir. 2011) (affirming the district court converting a pre-motion letter to a motion); *see also Manus Sports Gloves, LLC v. Everlast Worldwide, Inc.*, 759 F. Supp. 2d 459, 460 (S.D.N.Y. 2010) (finding that "the Court is not persuaded that motion practice is warranted at this point" and thus construing letter request for pre-motion conference as a motion).  Here, Plaintiff failed to file a response to Defendants' letter-motion twice.  Despite these failures and although the Court had already deemed Defendants' letter-motion unopposed, the Court is considering the arguments raised in Plaintiff's opposition, ECF No. 14, and his supplemental briefing, ECF No. 18.

[2] Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In resolving a motion to dismiss, "consideration is limited to the factual allegations in plaintiffs' . . . complaint, which are accepted as true." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). While the Court must draw all reasonable inferences in favor of the non-moving party, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff raises claims under 42 U.S.C. § 1983 for excessive force, supervisory liability, failure to intervene, and municipal liability. "Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). Defendants move to dismiss Plaintiff's claims on the basis that: (i) Plaintiff's claims are barred by the statute of limitations, and (ii) Plaintiff voluntarily waived his rights to assert any claims arising from his arrest as a result of a settlement agreement in a related civil forfeiture action. *See generally* ECF No. 11.

### I. Plaintiff's Claims Are Time-Barred

"Section 1983 does not provide a specific statute of limitations. Thus, courts apply the statute of limitations for personal injury actions under state law. Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations." *Rivera v. City of New York*, No. 20-cv-9968, 2022 WL 1523165, at *4 (S.D.N.Y. May 13, 2022). However, "[a]lthough the statute of limitations period is determined by reference to state law, the determination of when a claim accrues is governed by federal law. For § 1983 claims, accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.*; *see also Garland v. City of*

*New York*, No. 22-cv-10947, 2023 WL 2898625, at *5 (S.D.N.Y. Apr. 10, 2023) ("A claim for excessive force under Section 1983 accrues when the excessive force was used.  In addition, a claim for failure to intervene under Section 1983 that is associated with an official's use of excessive force accrues on the date of the excessive force.").

Plaintiff's claims accrued on the day of his arrest, that is on March 22, 2019, and he filed his complaint on October 21, 2022.  Under the three-year statute of limitations, Plaintiff's claims were time-barred as of March 23, 2022.  Plaintiff argues that on March 20, 2020, the Governor of New York issued Executive Order 202.8, which he claims "tolled the statute of limitations in New York in light of the COVID-19 pandemic" and "[s]ubsequent orders extended the tolling period until November 3, 2020."  ECF No. 14 at 2.[3]  Plaintiff implicitly argues that he is entitled to an additional 228 days—the period of time covered by the executive orders—to file his complaint.  Courts in this Circuit are split on whether Executive Order 202.8 suspended or tolled time periods to which it applied. *Compare Barry v. Royal Air Maroc*, No. 21-cv-8481, 2022 WL 3215050, at *4 (S.D.N.Y. July 8, 2022), *report and recommendation adopted*, 2022 WL 3214928 (S.D.N.Y. Aug. 9, 2022) ("A number of New York courts have held that [Executive Order] 202.8 suspended *rather than* tolled the time periods to which it applied, and thus extended limitations periods that would otherwise have expired *between* March 3 and November 3, 2020, but did not lengthen periods that expired *after* November 3, 2020.") (emphasis added), *with Bell v. Saunders*, No. 20-cv-256, 2022 WL 2064872, at *5 (N.D.N.Y. June 8, 2022) ("Executive Order 202.8 used the word 'toll' in its operative language, and the Court does not find any persuasive evidence that the Court of Appeals would reach a different conclusion.").

---

[3] The Governor of New York later issued nine subsequent executive orders that extended the suspension period through November 3, 2020.  *See* Executive Order Nos. 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72.

Case 2:22-cv-06410-HG   Document 20   Filed 06/23/23   Page 5 of 12 PageID #: 82

*A.     The Executive Orders Suspended (But Did Not Toll) the Statute of Limitations*

"A toll suspends the running of the applicable period of limitation for a finite time period, and the period of the toll is excluded from the calculation of the relevant time period.  Unlike a toll, a suspension does not exclude its effective duration from the calculation of the relevant time period.  Rather, it simply delays expiration of the time period until the end date of the suspension." *Brash v. Richards*, 149 N.Y.S.3d 560, 561 (N.Y. App. Div. 2021).  The Court is of the opinion that Executive Order 202.8 *suspended* the time period to which it applied, and thus Plaintiff's claims were time-barred as of March 23, 2022.  *See also Baker v. 40 Wall St. Holdings Corp.*, 161 N.Y.S.3d 723, 724–25 (N.Y. Sup. Ct. 2022) ("[T]he Governor did not toll all statutes of limitation, but only suspended them, due to the COVID-19 Pandemic, and . . . he terminated the suspension on November 3, 2020. . . .  With a suspension, a party can only benefit from the Executive Orders if his or her statute of limitations or filing deadline fell within the suspension period."); *Cruz v. Guaba*, 159 N.Y.S.3d 828, 828 (N.Y. Sup. Ct. 2022) ("Th[e] toll merely stopped the running of any applicable period of limitations for the 228 day period of time between March 3, 2020 and November 3, 2020.  Contrary to Plaintiff's claims, the executive orders did not extend everyone's statute of limitations period for an additional 228 days.").

Although Executive Order 202.8 uses the word "toll" in its operative language, the Governor's authority to modify the statute of limitations was derived from the authority vested in him by Section 29–a of New York's Executive Law.  *See* State of New York Executive Order No. 202.8 ("I . . . Governor of the State of New York, by virtue of the authority vested in me by Section 29–a of Article 2-B of the Executive Law. . . temporarily suspend or modify . . . any specific time limit for the commencement, filing, or service of any legal action . . . is hereby tolled from the date of this executive order. . . .").  Executive Law Section 29–a provides that the Governor has the authority to "*temporarily suspend*" statutes of limitation during a state disaster emergency.  *See*

5

N.Y. Exec. Law § 29–a(1).  Section 29–a(2)(d) further provides that, "the [Governor's] order may provide for such *suspension* only under particular circumstances, and may provide for the alteration or modification of the requirements of such statute, local law, ordinance, order, rule or regulation suspended, and may include other terms and conditions." *Id.* (emphasis added).  Some New York courts have interpreted this language to mean that because the Governor has the authority to toll a statute of limitations, a toll is therefore the preferred interpretation.  *See e.g.*, *Brash*, 149 N.Y.S.3d at 563 ("Since the tolling of a time limitation contained in a statute constitutes a modification of the requirements of such statute within the meaning of Executive Law § 29–a(2)(d), these subsequent executive orders continued the toll that was put in place by [the] Executive Order . . . .").  While the Court does not posit an opinion on the Governor's ultimate authority, it is clear from the language of Section 29–a(2)(d) that COVID-19 presented a "particular circumstance" warranting *suspension*.  *See Baker*, 161 N.Y.S.3d at 725 ("Here, if there was a toll, the period from the Governor's first order on March 20, 2020, to his last order on November 3, 2020 . . . would be added to the statute of limitations for every person with a claim who had not filed suit by March 20, 2020, and would also be added to every type of litigation deadline that arose during the suspension period.  That is not what was intended, nor is it what was provided for in the Executive Orders.").

Here, Plaintiff had a year and four months from the expiration of Executive Order 202.8 (on November 3, 2020) to the expiration of the three-year statute of limitations (March 23, 2022).  Yet, Plaintiff did not file his complaint until October 21, 2022.[4]  Executive Order 202.8 was issued in part to preserve litigants' rights during the COVID-19 pandemic, which presented extraordinary difficulties for, among other things, filing, obtaining counsel, and utilizing court services such as

---

[4] It is worth noting that if the Court was inclined to interpret Executive 202.8 as a toll—which it is not—the statute of limitations would have expired on November 6, 2022.  Plaintiff did not file his complaint until October 21, 2022, just 16 days before the statute of limitations would have expired under Plaintiff's theory.

*pro se* offices. Interpreting Executive Order 202.8 as a toll rather than a suspension is contrary to the spirit of the Executive Order. Any other interpretation would provide an unwarranted windfall to litigants, such as Plaintiff, who had claims that did not expire during the emergency period covered by the Executive orders. Those litigants did not face the risk that their claims would expire because of an inability to access the courthouse to file their claims during a period when normal courthouse operations were in flux because of the pandemic. Accordingly, the Court finds that Plaintiff's claims are time-barred.

                B.      *The Court Declines to Apply Any Tolling Authorized by the Executive Orders*

Alternatively, even if Executive Order 202.8 and its successive orders tolled rather than suspended the statute of limitations deadline, the Court holds that such a state law tolling rule does not apply to Section 1983 claims filed in federal court. Both the Supreme Court and the Second Circuit have explained that when considering Section 1983 claims, federal courts "generally refer[] to state law for tolling rules" when addressing statute of limitations issues. *Wallace v. Kato*, 549 U.S. 384, 394 (2007); *see Watson v. Tong*, No. 22-1258-cv, 2023 WL 176963, at *2 n.3 (2d Cir. Jan. 13, 2023) (explaining that "Section 1983 claims borrow from state law for rules governing tolling"). However, this borrowing rule does not necessarily apply in every circumstance. The Supreme Court has said that an exception exists when applying a state law tolling rule "would defeat the goals of the federal statute at issue." *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (applying state law tolling rule to Section 1983 claims). *See also Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) ("The Supreme Court has instructed that in section 1983 actions, we borrow not only a state's limitations period but also its tolling rules, unless applying the state's tolling rules would defeat the goals of the federal statute at issue."); *Onibokun v. Chandler*, 749 F. App'x 65, 66 (2d Cir. 2019) (confirming continued vitality of exception).

7

The Court finds that applying any tolling purportedly required by the Executive Orders to Section 1983 claims filed in federal court would defeat the purposes of finality and certainty that statutes of limitations serve. The portion of Executive Order 202.8 that tolled the statute of limitations in New York state was expressly attributed not only to the Governor's power, but also to "the directive of the Chief Judge of the State to limit court operations to essential matters during the pendency of the COVID-19 health crisis." *See* State of New York Executive Order No. 202.8. Any tolling of the statute of limitations was, therefore, tied specifically to the status of operations in New York state courts and their diminished ability to serve the public due to their limited operations. But the federal courts operated under different circumstances, and Congress did not similarly respond to their limited availability by tolling, suspending, or extending all applicable statute of limitations.

Notably, the Court's decision not to give any tolling effect to the Executive Orders does not diminish plaintiffs' substantive rights because state courts are obligated to exercise concurrent jurisdiction over Section 1983 claims. *See Haywood v. Drown*, 556 U.S. 729, 735–36 (2009). During such suits, the New York courts may interpret the Executive Orders as they deem appropriate under state law.

## II.  The Settlement Agreement Establishes Waiver

In conjunction with the criminal prosecution related to Plaintiff's arrest, a civil forfeiture action was commenced against Plaintiff by the District Attorney of Suffolk County in Suffolk County Supreme Court. *See* ECF No. 11 at 2; *see also Sini v. Loeb*, Index No. 19-0862 (Suffolk Cnty. Sup. Ct.). On April 26, 2022, "Plaintiff resolved the forfeiture action by voluntarily entering into a settlement agreement and consent to forfeiture." *Id.* Defendants argue that Plaintiff's suit is barred by the settlement agreement because Plaintiff "waived his rights to assert any claims arising

8

out of the underlying events of March 22, 2019" including his arrest. ECF No. 11 at 2. Plaintiff responds that the waiver was not "in fact [a] knowing and voluntary waiver of [an] action based on excessive force." ECF No. 14 at 3. "Although a defendant has the initial burden of establishing that it has been released from any claims, a signed release shifts the burden of going forward to the plaintiff to show that there has been fraud, duress or some other fact which will be sufficient to void the release." *Gallo v. Inter-Con Sec. Sys., Inc.*, No. 20-cv-4879, 2021 WL 3913539, at *5 (S.D.N.Y. Sept. 1, 2021) (granting motion to dismiss released claims); *Ogbolu v. Trs. of Columbia Univ.*, No. 21-cv-1697, 2022 WL 280934, at *3 (S.D.N.Y. Jan. 31, 2022) (granting motion to dismiss and describing same burden-shifting framework), *aff'd*, No. 22-419-cv, 2023 WL 2579044 (2d Cir. Mar. 21, 2023).

As an initial matter, the Court must determine whether it can consider the settlement agreement on a motion to dismiss. Generally, in resolving a motion to dismiss, "consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true." *Brass*, 987 F.2d at 150. However, "if the Settlement Agreement would dispose of this matter (that is, if it is an agreement entered into in good faith) it makes no sense to deny dismissal simply because it was not referenced in the Complaint." *See In re Refco Inc. Secs. Litig.*, No. 07-md-1902, 2012 WL 4053939, at *2 (S.D.N.Y. Aug. 8, 2012), *report and recommendation adopted*, 2012 WL 4009175 (S.D.N.Y. Sept. 12, 2012); *see also Deutsch v. Pressler, Felt & Warshaw, LLP*, 535 F. Supp. 3d 322, 327 (S.D.N.Y. 2021) (citing *In re Refco* and considering settlement agreement at motion to dismiss stage). Accordingly, the Court will consider the settlement agreement because its release provision is dispositive.

Additionally, the settlement agreement was publicly filed on the Suffolk County Supreme Court's docket and so-ordered by the presiding judge in order to terminate the parties' litigation.

9

*Sini v. Loeb*, Index No. 19-0862 (Suffolk Cnty. Sup. Ct. filed Apr. 29, 2022) (NYSCEF No. 10). The Court may therefore consider the agreement pursuant to the Court's authority to take judicial notice of dockets from other courts' proceedings on a motion to dismiss. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (affirming decision granting motion to dismiss and explaining that "docket sheets are public records of which the court could take judicial notice").[5]

In this case, the settlement agreement's "release and indemnification" provision provides that:

> [Plaintiff] hereby agrees to release, indemnify, and hold harmless the District Attorney, the SCPD, the County of Suffolk, their officers, agents and/or employees from and against *any* claim for relief or cause of action for any conduct or action *in any way connected to the underlying criminal action*, the action, and/or the seizure, custody, and release of any and all property, including, but not limited to, claims by third parties to ownership of or security interest in property hereby forfeited, released to the defendant, or paid to his counsel.

ECF No. 15-1 at 5 (emphasis added). In approving the settlement agreement, the Suffolk County Supreme Court also ordered that "upon the express, written consent of the parties to the stipulations, understandings, *waivers*, and all other representations set forth above, that the Agreement shall be accorded full force and effect, and enforceable in law and equity." *Id.* at 7 (emphasis added).

The Court finds that the express language of the settlement agreement, which provides that Plaintiff waives "*any* claim for relief . . . *in any way connected to the underlying criminal action*," militates in favor of dismissal of the action. *Id.* at 5 (emphasis added). Plaintiff does not dispute that the settlement agreement relates to his March 22, 2019, arrest, but rather argues that constitutional rights can only be waived "upon clear and convincing evidence that the waiver is

---

[5] Plaintiff further argues that the Court should not consider the settlement agreement because it is not attached to, incorporated by reference, integral to, or explicitly referenced in the complaint. *See* ECF No. 18 at 2 (citing *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002)). For the reasons set forth above, the Court need not reach this issue because it may take judicial notice of the settlement agreement, and alternatively may consider the settlement agreement if it would "dispose" of the action. *See In re Refco*, 2012 WL 4053939, at *2.

10

knowing, voluntary, and intelligent." ECF No. 14 at 2 ("[D]efendants claim that . . .the plaintiff resolved the forfeiture action by . . . entering into a settlement agreement . . . which was so ordered by . . . *the judge presiding over the criminal action* . . . . This agreement was in connection with the forfeiture of a jeep and not a waiver of any action for excessive force.") (emphasis added). The language of the release leaves no room for doubt, and there is nothing to suggest that Plaintiff was unaware that the release would apply to "any claim . . . in any way connected to the underlying criminal action." ECF No. 15-1 at 5. The settlement agreement also unambiguously states that Plaintiff was assisted and advised of the consequences of its provisions by counsel. *Id.* ("[Plaintiff] knowingly and voluntarily enters into this Agreement after effective assistance from his counsel. [Plaintiff] has been advised by his attorney of the alternatives to this Agreement and *the consequences* thereto . . . .") (emphasis added). As a result, contrary to Plaintiff's assertions, the Court finds that he knowingly and voluntarily agreed to a release of all claims. *See Miller v. New York City Dep't of Educ.*, 71 F. Supp. 3d 376, 380 (S.D.N.Y. 2014) ("A release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced. This standard applies to waivers of constitutional rights."). [6] Accordingly, the Court further finds that the complaint should be dismissed for the alternative reason that Plaintiff is barred from bringing the action as a result of the settlement agreement.

---

[6] Plaintiff asserts that he was advised by his prior attorneys that "if he accepted the offer of the misdemeanor and forfeit the Jeep, that he was not waiving his civil lawsuit against the county for excessive force." ECF No. 18 at 2. Yet, the language of the settlement agreement explicitly states the opposite. "A plaintiff cannot survive a motion to dismiss merely by stating conclusory allegations in the complaint." *Lans v. Kiska Const. Corp.*, No. 96-cv-4114, 1997 WL 313162, at *2 (S.D.N.Y. Apr. 18, 1997). Here, not only is Plaintiff's assertion conclusory, it is also not featured in the complaint. Accordingly, the Court will not consider it.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion to dismiss is GRANTED in its entirety and Plaintiff's claims are dismissed with prejudice.[7] The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
       June 23, 2023

---

[7] The Court finds that dismissal with prejudice is warranted because any amendment would be "futile" as Plaintiff's claims are time-barred. *See Kleeberg v. Eber*, 331 F.R.D. 302, 314 (S.D.N.Y. 2019) ("Courts will find good reason to deny a request for leave to amend pursuant to Rule 15 where the proposed amendment is futile because, for example, it fails to state a viable legal claim or is time-barred.").

12